# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MARK POTTEBAUM, | ) | CHAPTER 7 |
| LYNDA POTTEBAUM, | ) | |
| | ) | BANKRUPTCY NO. 11-00634 |
| Debtors. | ) | |
| | ) | |
| IBEW LOCAL 231; IBEW | ) | |
| LOCAL 231 VACATION PLAN | ) | |
| and IBEW LOCAL 231 | ) | |
| LABOR-MANAGEMENT | ) | |
| COMMITTEE, | ) | ADVERSARY NO. 11-9050 |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| MARK POTTEBAUM, | ) | |
| | ) | |
| Defendant. | ) | |

## TRIAL RULING

This case came before the Court for trial in Sioux City, Iowa. Attorney Michael E. Amash appeared on behalf of Plaintiffs. Attorney Donald H. Molstad appeared on behalf of Debtor/Defendant. The Court took the matter under advisement. Plaintiff filed a post-hearing brief on May 3, 2013. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## STATEMENT OF THE CASE

Plaintiffs seek a determination that the debt owed to Plaintiffs—a union and two union funds—is nondischargeable under 11 U.S.C. § 523(a)(4) and (6). Plaintiffs provided testimony that Debtor failed to make required payments to the union and funds as required by the union contract Debtor signed. Plaintiffs argue that Debtor committed defalcation while under a fiduciary duty, embezzlement, and willful and malicious injury. Debtor admits to incurring the debt to Plaintiffs, but denies that he did so in the ways Plaintiffs assert, which would render the debt nondischargeable. For the following reasons, the Court finds that Plaintiffs have not proven all of the elements of 11 U.S.C. § 523(a)(4) or (6).

## FINDINGS OF FACT AND PROCEDURAL HISTORY

Debtor filed for Chapter 7 bankruptcy on March 25, 2011. Debtor is the President and sole shareholder of High Tech Electric, LLC ("High Tech"). High Tech is an electrical contractor that hires workers for each of its jobs from the International Brotherhood of Electrical Workers, Local Union 231 (the "Union"). Jim Kavanaugh, the business manager, secretary, and treasurer of the Union, testified about how the Union operates. The Union is comprised of member electricians with varying degrees of experience. The Union entered into a collective bargaining agreement ("CBA") with the Sioux City Division, Iowa Chapter, National Electrical Contractors Association ("NECA")—the

representative of the contractors. Contractors that seek Union labor and Union contracts sign a Letter of Assent, agreeing to be represented by the NECA and bound by the CBA. The CBA governs the relations between the contractors and the Union electricians.

Under the CBA, the Union assigns its members to jobs with local electrical contractors, like High Tech, that have signed a Letter of Assent with the Union. Members receive their paycheck directly from the contractor. The contractor is required by the CBA to withhold from the member's paycheck a percentage set by current Union by-laws for Union dues—$2.40 per hour for vacation contributions and $0.50 per hour for the Local Labor-Management Cooperation Committee (the "LLMCC"). The contractor is required to remit those amounts to the Union, the Vacation Fund, and the LLMCC once per month. There is no provision in the CBA or Letter of Assent requiring contractors to segregate the withholdings from other funds before payment is due.

Kavanaugh also testified about how the Vacation Fund operates. Union members are independent contractors and do not receive paid time off. Instead, $2.40 per hour of each member's paycheck is withheld and placed into a Vacation Fund. A separate Vacation Fund is maintained for each member at the Municipal Credit Union. The members have full access to the account and can withdraw money as they see fit, although the overriding purpose of the system is for the

3

members to use the funds as supplemental income when they take time off. The Union itself does not take any portion of these funds.

In Debtor's testimony, he agreed with Kavanaugh's descriptions of how the Union operates and High Tech's duties under the Union agreement. Debtor signed a Letter of Assent with the Union on behalf of High Tech on August 22, 2001. High Tech then employed Union members, withheld the requisite amounts from member paychecks, and remitted those amounts monthly for many years. However, as High Tech's business slowed, Debtor continued to employ Union members on High Tech job sites, withhold the requisite amounts from those workers' pay checks, and make the required payments as best he could. In spite of these efforts, Debtor did not have the money to make several of the payments.

Debtor admitted that he knew he was required to pay those sums. Debtor was in weekly contact with Kavanaugh during this time. Kavanaugh testified that he was attempting to work with Debtor in the hopes that Debtor would land a good contract that would help save his company and the Union jobs he provided. Kavanuagh also admitted that although he knew Debtor was not making the required payments, he did not pull the workers off the job High Tech had at the time. Kavanaugh said such a move would have immediately put Debtor out of business, resulting in no further payment to the funds or payment of wages to Union workers. Kavanaugh also conceded the market was bad at the time and

4

those Union workers would not have had alternative jobs.  Eventually, the apprenticeship committee—a committee of members who oversee the lesser-trained members—pulled the apprentices off Debtor's job site.

Debtor testified that he did everything he could to continue making those monthly payments.  He took money he needed for other things and used it to pay the Funds until the money ran out.  He stated unequivocally that he had no intent to wrong or harm the workers or Union Funds.  The Court finds his testimony to be credible.

Plaintiffs assert that Debtor has failed to remit $59,284.33 to the Vacation Fund, $61,860.83 to the Union for dues, and $2,993.39 to the LLMCC.  Plaintiffs argue that those entities have a right to those funds and that Debtor's retention of those sums constituted a form of tortious conversion of property.  Plaintiffs argue that this debt should be nondischargeable under 11 U.S.C. § 523(a)(4) because Debtor committed defalcation while acting in a fiduciary capacity and embezzlement.  Plaintiffs assert that Debtor held the funds in trust and violated his duties as trustee.  Plaintiffs argue, at a minimum, Debtor committed embezzlement by taking the funds that were supposed to go to a specific fund and used them for something else.

Plaintiffs also argue that the debt is nondischargeable under 11 U.S.C. § 523(a)(6) because the debt arose from willful and malicious conduct by Debtor

against Plaintiffs. Specifically, Plaintiffs assert that Debtor acted willfully and maliciously when he deducted sums from employees' wages but failed to remit that money to Plaintiffs.

Debtor argues principally that he had no intent to harm Plaintiffs as required by § 523(a)(6) and the defalcation and embezzlement portions of § 523(a)(4). Debtor argues he was not the trustee of a trust as required for the defalcation while in a fiduciary duty portion of § 523(a)(4) to apply. Defendant additionally argues that Plaintiffs waived their right to payment by allowing members to continue work at Debtor's job site when they knew Debtor could not remit the outstanding amount. Debtor argues that this amounts to consent by Plaintiffs to the non-payment of fees and benefits required under the contract.

## CONCLUSIONS OF LAW

### I.   Dischargeability under 11 U.S.C. § 523(a)(4)

Plaintiffs argue that Debtor's debt to Plaintiffs is nondischargeable under 11 U.S.C. § 523(a)(4). Section § 523(a)(4) provides:

> (a)   A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
> . . .
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

6

11 U.S.C. § 523(a)(4) (2012). Plaintiffs' main arguments are that the debt is nondischargeable under § 523(a)(4) for: 1) defalcation while acting in a fiduciary capacity; and 2) embezzlement.

### A. Defalcation While Acting in a Fiduciary Capacity

To establish defalcation while acting in a fiduciary capacity, Plaintiffs must establish, by a preponderance of the evidence: 1) the existence of an express trust establishing the fiduciary relationship, and 2) that the debt arose from Debtor's defalcation while acting as a fiduciary. See Grogan v. Garner, 498 U.S. 279, 290 (1991) (holding that the preponderance of the evidence standard applies for exceptions to discharge); Jafarpour v. Shahrokhi (In re Shahrokhi), 266 B.R. 702, 707 (B.A.P. 8th Cir. 2001) (stating elements of § 523(a)(4)). "The exception is strictly construed in favor of the debtor in order to comply with the 'fresh start' policy underlying the Bankruptcy Code." Raso v. Fahey ( In re Fahey), 482 B.R. 678, 687 (B.A.P. 1st Cir. 2012) (citing Grogan, 498 U.S. at 286).

### 1. Fiduciary Relationship

Whether a fiduciary relationship exists within the meaning of § 523(a)(4) is a question of federal law. Tudor Oaks Ltd. P'ship v. Cochrane (In re Cochrane), 124 F.3d 978, 984 (8th Cir. 1997). The Eighth Circuit has stated: "We have interpreted the term 'fiduciary' in § 523(a)(4) to refer only

7

to trustees of 'express trusts.'" Hunter v. Philpott, 373 F.3d 873, 875–76 (8th Cir. 2004) (citing Barclays Am./Bus. Credit v. Long (In re Long), 774 F.2d 875, 878 (8th Cir. 1985) (quoting Davis v. Aetna Acceptance Co., 293 U.S. 328, 333 (1934))); see also Cal-Micro, Inc. v. Cantrell (In re Cantrell), 329 F.3d 1119, 1125 (9th Cir. 2003) ("[T]he broad, general definition of fiduciary—a relationship involving confidence, trust and good faith—is inapplicable in the dischargeability context."). The reference to fiduciary duty "is used in a 'strict and narrow sense,' and therefore does not embrace trustees of constructive trusts imposed by law because of the trustee's malfeasance." Hunter, 373 F.3d at 875–76 (citing In re Long, 774 F.2d at 878). "A mere contractual relationship is less than what is required to establish the existence of a fiduciary relationship." Smith v. Wheeler (In re Wheeler), 317 B.R. 783, 789 (Bankr. N.D. Iowa 2004) (citing Werner v. Hofmann, 5 F.3d 1170, 1172 (8th Cir. 1993)).

In Hunter, the Eighth Circuit addressed whether an employer who holds funds owed to an employee benefit program qualifies as a fiduciary under § 523(a)(4). 373 F.3d at 875–76. In that case, the debtors were the owners of a company that had entered into a collective bargaining agreement with a union. Id. at 874. The collective bargaining agreement required the company to contribute to employee benefit funds in order to employ union

8

members. Id. at 874–75. The agreement required the debtors' company to pay contributions to the fund once per month. Id. The company held the money in its general account. Id. at 875. As debtors slid into bankruptcy, they missed two months of contributions. Id. The fund brought a nondischargeability action against one of the debtors individually. Id. The bankruptcy court had previously found that the employee benefit funds qualified as ERISA plans and debtor qualified as a fiduciary under ERISA. Id. However, the Eighth Circuit noted that an ERISA fiduciary is not automatically a fiduciary for § 523(a)(4) purposes. Id.

Instead, the Eighth Circuit instructed courts to first "look specifically at the property that is alleged to have been defalcated to determine whether [debtor] was legally obligated to hold that specific property for the benefit of the Funds." Id. The Eighth Circuit found the agreement with the union did not require debtors to hold the specific income earned from the union labor in trust for the employee benefit funds. Id. at 876. The fact that the income was permitted to go into a general account and the union debt could be paid out of general funds was significant. Id. The Circuit concluded that "[s]imply possessing property to which an ERISA plan asserts a claim does not place one in a fiduciary relationship with the plan." Id.

9

The Eighth Circuit continued the analysis by noting that courts must also "look to the substance of the transaction in deciding whether a person is a fiduciary or whether the relationship is more contractual than fiduciary." Id. (citing In re Long, 774 F.2d at 878; Werner, 5 F.3d at 1172). The Circuit found significant the fact that the debtor had not signed the agreement in his personal capacity or guaranteed the company's performance under the agreement and that the debtor did not have the ability to act solely for the benefit of the funds. Id. Eighth Circuit ultimately concluded that the relationship between the debtor and the funds was contractual, not fiduciary under § 523(a)(4). Id. at 877.

The Bankruptcy Court for the Southern District of Iowa recently distinguished Hunter in Chao v. Gott (In re Gott), 387 B.R. 17 (Bankr. N.D. Iowa 2008). In Gott, the debtor's company began an employee retirement plan through MetLife. Id. at 20. The debtor set up a special bank account to hold the employee withholdings and employer matching funds. Id. The bankruptcy court in Gott, like the Eighth Circuit in Hunter, determined that the funds in the account qualified as plan assets under ERISA and that the debtor qualified as a fiduciary under ERISA. Id. at 24. Gott then followed the remainder of the Hunter analysis to determine whether the facts of the case made an ERISA fiduciary also a fiduciary under § 523(a)(4). Id. at 25.

10

In doing that analysis, the court noted a divide in the case law. On one side of the divide were cases involving debts for employer contributions (including Hunter)—where courts found no fiduciary status under § 523(a)(4). Id. at 23–24 (citing Hunter, 373 F.3d at 875; In re Bucci, 493 F.3d 635, 641–42 (6th Cir. 2007); In re Luna, 406 F.3d 1192, 1208 (10th Cir. 2005); In re Halpin, 370 B.R. 45, 50 (N.D.N.Y. 2007); In re Popovich, 359 B.R. 799, 806 (Bankr. D. Colo. 2006); In re Tsikouris, 340 B.R. 604, 617 (Bankr. N.D. Ind. 2006); In re Engleman, 271 B.R. 366, 370 (Bankr. W.D. Mo. 2001)). On the other side were cases involving employee contributions or amounts actually withheld from employee paychecks—where courts found the employers were fiduciaries under § 523(a)(4). Id. at 24 (citing Eavenson v. Ramey, 243 B.R. 160, 166 (N.D. Ga. 1999); Chao v. Johnson (In re Johnson), No. 05-36068, Adv. No. 05-3583, 2007 WL 646376, at *5 (S.D. Tex. Feb. 26, 2007); In re O'Quinn, 374 B.R. 171, 175 (Bankr. M.D.N.C. 2007); In re Weston, 307 B.R. 340, 343 (Bankr. D.N.H. 2004); In re Gunter, 304 B.R. 458, 462 (Bankr. D. Colo. 2003); In re Coleman, 231 B.R. 393, 396 (Bankr. S.D. Ga. 1999)). Applying these cases, Gott found the fact that the debtor controlled employee withholdings (not employer contributions) set up a separate account to hold the employee

funds, and signed the plan agreement all demonstrated that debtor was a fiduciary under § 523(a)(4). Id. at 25.

Applying Gott, and its division of the case law, the Court finds Debtor probably should be characterized as a fiduciary under § 523(a)(4). While the collective bargaining agreement did not require Debtor to keep the funds he collected in a separate account expressly for the benefit of Plaintiffs, the actual withholding of and responsibility for the money intended to benefit the employees probably made Debtor a fiduciary under ERISA and the case law discussing it. However, an ERISA trustee is not necessarily a trustee under § 523(a)(4), and the Court must "look to the substance of the transaction in deciding whether a person is a fiduciary" for nondischargeability purposes. See Hunter, 373 F.3d at 876. The fact that the funds Debtor was responsible for were employee withholdings—not employer contributions—is a key factor here. The responsibility for an employer to properly handle the employees' own funds brings a role with more accountability, like that of a fiduciary. See In re Gott, 387 B.R. at 15. Although the competing factors here leave this case much closer to the gray area than in Gott, the Court will assume Plaintiffs have sufficiently shown that Debtor was a fiduciary under § 523(a)(4).

**2. Defalcation**

As noted, Debtor's fiduciary role alone is not enough to make the debt nondischargeable. There must also be a "defalcation," while in the fiduciary role. 11 U.S.C. § 523(a)(4) (2012). Recently, the Supreme Court determined that the term "defalcation" means a culpable state of mind involving "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." Bullock v. BankChampaign, N.A., 133 S. Ct. 1754, 1757 (2013). "Thus, where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong." Id. at 1759. "Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary 'consciously disregards' (or is willfully blind to) 'a substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty." Id.

The Court finds that Debtor here did not have the state of mind required for a "defalcation." The Court did not hear any evidence that Debtor's failure to remit payment to Plaintiffs involved "bad faith, moral turpitude, or other immoral conduct." Id. at 1759. Rather, the Court heard both witnesses paint the picture of a union company and the Union working together to keep the company afloat with the hope and intent of getting everyone paid eventually. Debtor made the payments when he was able. He

13

tried to make good on the plan him and the Union both were pursuing—it simply did not happen. His intent was to make the payments and do right by everyone—not the opposite, which Plaintiffs must show to make the debt nondischargeable.

Without a knowing, intentional, or bad faith action, Plaintiffs must show Debtor's conscious disregard to a substantial and unjustifiable risk that his conduct would violate a fiduciary duty. Id. Plaintiffs made no such showing. The Court heard only that Debtor was desperately attempting to prioritize his bills in order to eventually pay them all. He did so while communicating about his problems with the Union and worked with it to try to fund all his obligations. This is not at all evidence that Debtor acted with a conscious disregard to a substantial and unjustifiable risk that his conduct would violate a fiduciary duty. Plaintiffs have not met their burden of showing Debtor committed a "defalcation" while acting as a fiduciary.

### B. Embezzlement

Plaintiffs also argue the debt is nondischargeable under § 523(a)(4) for embezzlement. "In contrast to fraud and defalcation, embezzlement and larceny need not occur within a fiduciary capacity in order to be nondischargeable under § 523(a)(4)." Humphries v. Martinez (In re Martinez), 410 B.R. 847, 852 (Bankr. W.D. Mo. 2008). Embezzlement for §

14

523 purposes is the "fraudulent appropriation of property of another by a person to whom such property has been entrusted or into whose hands it has lawfully come." Reshetar Sys. v. Thompson (In re Thompson) 458 B.R. 504, 509 (B.A.P. 8th Cir. 2011), aff'd, 686 F.3d 940 (8th Cir. 2012) (quoting Belfry v. Cardozo (In re Belfry), 862 F.2d 661, 662 (8th Cir. 1988)). "To prevail, the creditor must establish 'the debtor improperly used the creditor's property before complying with some obligation to the creditor.'" Id. (quoting Werner v. Hofmann, 5 F.3d 1170, 1172 (8th Cir. 1993)). Additionally, a creditor must prove that the circumstances surrounding the appropriation indicate fraud. Bankers Trust Co. v. Hoover (In re Hoover), 301 B.R. 38, 52 (Bankr. S.D. Iowa 2003).

The facts and circumstances of this case bear no indicia of fraud. Debtor was in weekly contact with Plaintiffs to try and find a solution, not hide the problem to deceive anyone. He did not make any false statements or otherwise mislead Plaintiffs about High Tech's circumstances. As noted, there was a mutual effort between them to keep Debtor's company in business to preserve Union jobs and attempt to get all required payments made. The fact that this ultimately did not work out does not make it fraud, embezzlement, or any other conduct that would make Debtor's debt nondischargeable under § 523(a)(4). This is more accurately characterized

as a case of good intentions that were not realized in the end—nothing more and nothing less.

## II.    Dischargeability under 11 U.S.C. § 523(a)(6)

Plaintiffs also assert that the debt is nondischargeable under 11 U.S.C. § 523(a)(6). Section 523(a)(6) provides:

> (b)   A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
> . . .
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

11 U.S.C. § 523(a)(6) (2012).  In order to establish the debt is nondischargeable under § 523(a)(6), Plaintiffs must show by a preponderance of the evidence that the debt is from both willful and malicious injury.  Blocker v. Patch (In re Patch), 526 F.3d 1176, 1180–81 (8th Cir. 2008); see Fischer v. Scarborough (In re Scarborough), 171 F.3d 638, 641 (8th Cir. 1999) ("Willful and malicious are two distinct requirements.").

In order to be willful, an injury must be intentional or deliberate. Reshetar Sys. V. Thompson (In re Thompson), 686 F.3d 940, 947–48 (8th Cir. 2012) (citing In re Long, 774 F.2d at 880.).  The Supreme Court has clarified that under § 523(a)(6), "nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to

16

injury." Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998). However, deliberate or intentional injury "is not limited to circumstances in which the debtor desires to bring about the consequences of his conduct. If the debtor knows that the consequences are certain, or substantially certain, to result from his conduct, the debtor is treated as if he had, in fact, desired to produce those consequences." In re Patch, 526 F.3d at 1180–81 (citing Geiger v. Kawaauhau (In re Geiger),113 F.3d 848, 852 (8th Cir. 1997), aff'd, Kawaauhau, 523 U.S. 51).

In order "[t]o qualify as 'malicious', the debtor's action must be targeted at the creditor . . . at least in the sense that the conduct is certain or almost certain to cause financial harm." In re Thompson, 686 F.3d at 947–48 (8th Cir. 2012) (quoting Hobson Mould Works v. Madison (In re Madsen), 195 F.3d 988, 989 (8th Cir. 1999)) (internal quotation marks omitted). "The debtor's knowledge that he or she is violating the creditor's legal rights is insufficient to establish malice absent additional aggravated circumstances." Johnson v. Logue (In re Logue), 294 B.R. 59, 63 (B.A.P. 8th Cir. 2003).

The Court finds that Plaintiff have not sustained their burden under § 523(a)(6). The Debtor's actions were not willful or malicious. At most, Debtor merely had knowledge that he might ultimately be violating a

17

creditor's rights. Even if that conduct could be characterized as legally willful, which the Court doubts, it certainly does not rise to the level of malicious, which is necessary to make a debt nondischargeable under § 523(a)(6). The factual record supporting this conclusion is the same as that discussed at length above. In short, Debtor and the Plaintiffs' representatives tried to make the best of a bad situation. There is no evidence anyone acted with anything but the best intentions.

Plaintiffs fail to sustain their burden under either 11 U.S.C. § 523(a)(4) or (6). Judgment will be entered in Defendant/Debtor's favor.

**WHEREFORE**, judgment is entered in Defendant/Debtor's favor. The above-captioned adversary is **DISMISSED**.

` Dated and Entered:

October 9, 2013

_____
**THAD J. COLLINS**
**CHIEF BANKRUPTCY JUDGE**